# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| PATRICK JOHN HAMMOND and DEBRA HAMMOND, | Civil No. 06-1670 (JRT/FLN) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| COMPAQ COMPUTER CORPORATION, RITTAL CORPORATION, and ORTAL DIECASTING, LTD., | |
| Defendants. | |

Lori L. Barton and Paul D. Peterson, **HARPER & PETERSON LLP**, 3040 Woodbury Drive, Woodbury, MN 55129-9617, for plaintiffs.

Leonard J. Schweich, **JARDINE LOGAN & O'BRIEN, PLLP**, 8519 Eagle Point Boulevard, Suite 100, Lake Elmo, MN 55042, for defendant Compaq Computer Company.

Patrick J. Larkin and Brian A. Wood, **LIND JENSEN SULLIVAN & PETERSON, PA**, 150 South Fifth Street, Suite 1700, Minneapolis, MN 55402, for defendant Rittal Corporation.

William A. Celebrezze, **AAFEDT, FORDE, GRAY MONSON & HAGER, PA**, 150 South Fifth Street, Suite 2600, Minneapolis, MN 55402, for defendant Ortal Diecasting, Ltd.

On May 2, 2002, Blue Cross and Blue Shield of Minnesota ("BCBSM") employee plaintiff Patrick Hammond ("Hammond") was injured when a door on a computer server cabinet fell off its hinges and struck him. Hammond and his wife, Debra Hammond, (collectively, "plaintiffs") brought this products liability action against defendants

Compaq Computer Corporation ("Compaq"), Rittal Corporation ("Rittal"), and Ortal Diecasting, Ltd. ("Ortal"). Specifically, plaintiffs allege that the computer server cabinet and cabinet hinge assembly were defectively designed and that defendants failed to warn Hammond of the unsafe condition of the computer server cabinet. The case is now before the Court on defendants' motions for summary judgment.[1] For the reasons discussed below, the Court grants those motions in part and denies them in part.

## BACKGROUND

At the time of the events giving rise to these claims, Hammond was an information technology specialist for BCBSM. On May 2, 2002, Hammond was installing a software package on a computer server. The server was housed in a VR Computer Cabinet manufactured by Rittal, and is referred to here as the Compaq Series 7000 Rack. Hammond left the server cabinet door open while he installed the software. As Hammond was working on the servers, a hinge pin in the hinge assembly on the upper portion of the cabinet door broke off, causing the door to fall and strike Hammond. An MRI later revealed that Hammond had a herniated cervical disk, which required surgical fusion. The parties' experts agree that the fracture of the hinge pin was likely caused by forces on the hinge pin that were created by users repeatedly opening the cabinet door

---

[1] Ortal filed a notice of joinder [Docket No. 108] in Rittal's and Compaq's motions for summary judgment. In this products liability action, Rittal and Ortal are both manufacturers of the allegedly defective product. Compaq joins Rittal's motion, but also separately argues that Compaq is entitled to summary judgment on the basis of retailer-specific products liability law. Because Ortal is not a retailer in this context, the Court separately evaluates the claims against the manufacturers, Rittal and Ortal, and the claims against the retailer, Compaq.

until it could not be opened further. The parties disagree, however, whether that conduct constituted abuse or misuse of the cabinet by BCBSM employees.

The VR Computer Cabinet is a four-hinge computer cabinet designed to house computer servers. The four hinges connect a door to the cabinet assembly, with two of the hinges allowing the door to be opened for access to the servers. The VR Computer Cabinets were manufactured and assembled by Rittal CSM of England, which subsequently shipped the cabinets to a Rittal facility in the United States for shipment directly to U.S. customers. Indeed, after BCBSM purchased the Compaq Series 7000 Rack at issue from Compaq, Rittal shipped the cabinet directly to BCBSM.

Sales of the VR Computer Cabinet first began in the mid-1980s, and Rittal manufactured and distributed the cabinets as Compaq Series 7000 Racks to Compaq customers from approximately 1992 to 1999. Since the mid-1980s, Rittal has manufactured over 370,000 VR Computer Cabinets, with approximately 1.5 million hinges placed and used on those cabinets. Approximately 250,000 VR Computer Cabinets were manufactured and distributed as Compaq Series 7000 Racks to Compaq customers, and the remaining cabinets were sold to other Rittal customers. Ortal was the sole manufacturer and distributor of the hinge pins that were used in the computer cabinets between approximately 1992 and 2003, including the hinge pin that broke in this case. Ortal manufactured those hinge pins with a zinc die casting with an alloy grade of Zamak 5.

The parties dispute whether Rittal manufactured the Compaq Series 7000 Racks specifically in accordance with Compaq's design specifications or whether the computer

cabinets only incidentally met Compaq's design specifications.  It is undisputed, however, that Compaq drafted the installation instructions that were sold with the Compaq Series 7000 Rack, including the Compaq Computer Corporation Product Quality Statements, Rack Pro Configuration Tool CD, Rack Products Documentation CD, and the 7000/4000 Rack Series Products Audio-Visual CD.  The Compaq logo also appears on the computer cabinet doors, and is placed there by Rittal at Compaq's specific request.

On March 30, 2007, Hammond filed an Amended Complaint against defendants, alleging negligent manufacture and design of the Compaq Series 7000 Rack; strict liability for manufacture and design of the cabinet; negligent instruction and failure to warn; and strict liability based on the allegedly deficient instructions and warnings.  Plaintiffs seek damages related to injuries Hammond suffered when the Series 7000 cabinet door broke off of its hinge and struck him.

## DISCUSSION

**I. STANDARD OF REVIEW**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all

reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. MOTIONS BY MANUFACTURERS RITTAL AND ORTAL

### A. Design-Defect Claims Against Rittal and Ortal

Plaintiffs assert that defendants are negligent and strictly liable for the defective design and manufacture of the Compaq Series 7000 Racks and for the hinge assembly on those cabinets.[2] "Minnesota merges negligence and strict liability claims into a single products liability theory, which employs a reasonable-care balancing test to determine whether a product is defective." *Thompson v. Hirano Tecseed Co., Ltd.*, 456 F.3d 805, 809 (8th Cir. 2006) (citing *Westbrock v. Marshalltown Mfg. Co.*, 473 N.W.2d 352, 356 (Minn. Ct. App. 1991)). To recover under a defect-design theory, an injured party must establish (1) that the product was in a defective condition unreasonably dangerous for its intended use; (2) that the defect existed when the product left the defendant's control; and (3) that the defect was the proximate cause of the injury sustained. *See Bilotta v. Kelley Co., Inc.*, 346 N.W.2d 616, 623 n.3 (Minn. 1984); *see also Drager v. Aluminum Indus. Corp.*, 495 N.W.2d 879, 882 (Minn. Ct. App. 1993).

---

[2] The Court does not address plaintiffs' apparent allegation of a manufacturing defect, as plaintiffs have not pled or attempted to produce evidence suggesting that the manufacture of the computer cabinet at issue departs from the intended design of the computer cabinet. *Harrison ex rel. Harrison v. Harrison*, 733 N.W.2d 451, 455 n.2 (Minn. 2007) ("A manufacturing defect in the products liability context means '"the product departs from its intended design."'" (citing Restatement (Third) of Torts: Products Liability § 2(a) (1998))); (*see also* Am. Compl., Docket No. 47, ¶ IX ("[D]ue to the unreasonable design of the Compaq 7000 Series server container and door unit, . . . Hammond suffered multiple serious and debilitating injuries . . . .").)

A product is defective if the manufacturer failed "to exercise that degree of care in his plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended." *Bilotta*, 346 N.W.2d at 621 (internal quotation marks omitted). "Whether a product is defective is generally a question of fact; only where reasonable minds cannot differ does the question become one of law." *Thompson*, 456 F.3d at 809.

To determine whether there is sufficient evidence to submit a design-defect claim to the jury, the Court "must balance the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm." *Young v. Pollock Eng'g Group, Inc.*, 428 F.3d 786, 789 (8th Cir. 2005) (internal quotation marks omitted); *see also Westbrock*, 473 N.W.2d at 356. "An important factor in this balancing test is the availability of a feasible, safer alternative design." *Id.* (citing *Kallio v. Ford Motor Co.*, 407 N.W.2d 92, 96 (Minn. 1987)). It is rare that design-defect cases will be successful without showing the availability and feasibility of a safer design. *Young*, 428 F.3d at 789 ("Conceivably, rare cases may exist where the product may be judged unreasonably dangerous because it should be removed from the market rather than be redesigned." (internal quotation marks omitted)). Indeed, "[i]n Minnesota, 'successful plaintiffs, almost without fail, introduce evidence of an alternative safer design.'" *Id.* (quoting *Kallio*, 407 N.W.2d at 95 n.6).

Rittal contends that summary judgment is appropriate because plaintiffs failed to produce evidence that the computer cabinet door assembly or the hinge component were unreasonably dangerous. Specifically, Rittal asserts that over 370,000 VR Computer

Cabinets have been manufactured, along with 1.5 million hinge pins, and there have been no complaints about the cabinet and there have been no other accidents reported.

### 1. Expert opinions

In response, plaintiffs rely in part on the expert affidavit and opinion of S. N. Bhatt, a licensed practicing engineer, to establish their design-defect claims. Bhatt initially notes that the hinge pin fractured because of leveraged lateral forces on the hinge caused by opening the cabinet door until it encountered an adjacent computer cabinet. According to Bhatt, those forces and the effect of the forces on the hinge were foreseeable by the manufacturer. Further, Bhatt concludes that opening the cabinet door until it was impeded by an adjacent computer cabinet was expected of the user, and did not constitute abuse of the cabinet. Bhatt contends that there were two alternative, safer designs of the VR Computer Cabinet that could have prevented the injuries to Hammond.

First, Bhatt opines that Zamak 5, the zinc alloy used in the hinge pin, was not an appropriate material for the hinge pin given the intended use of the door. Instead, Bhatt concludes that a stronger material, such as stainless steel, would have better withstood the forces that caused the break of the hinge pin in this case and would not have failed with the repetitive, normal use of the door.[3] Second, Bhatt opines that a safer computer

---

[3] Specifically, Bhatt notes that an examination of the Zamak 5-manufactured pin showed uneven porosity, which contributed to the breaking of the hinge pin. Bhatt opines that a stronger "wrought" material like stainless steel would not have a similar characteristic. (Bhatt Aff., Docket No. 93, at 6.)

cabinet would have incorporated three hinges, instead of two, because the third hinge would have provided redundant protection in the event that one of the hinges broke.

Rittal responds that the Bhatt opinion is insufficient to demonstrate that there was a viable alternative design. First, Rittal asserts that the suggestion that stainless steel or another metal could have been used is "meaningless" because over 1.5 million hinges have been manufactured with Zamak 5 zinc alloy, without report of accident. In support of that assertion, Rittal cites *Trost v. Trek Bicylce Corp.*, 162 F.3d 1004 (8th Cir. 1998), where the Eighth Circuit reviewed a products liability case in which a plaintiff was injured when riding a bicycle that he had ridden without incident for five years. After the plaintiff's accident, it was determined that the fracture of the top tube of the bicycle near the point where it met the front steering tube caused the accident, and the plaintiff alleged that the break was the result of a design defect. The district court dismissed the case at summary judgment, however, and the Eighth Circuit affirmed. *Id.* at 1009. Rittal claims that *Trost* is similar to this case, arguing that the mere fact that the hinge pin in the computer cabinet broke after several years of use did not render the product unreasonably dangerous.

Rittal further contends that the use of three hinges on the door, instead of two hinges, would defeat one of the key purposes of the door: interchangeability. In contrast, Bhatt and plaintiffs claim that interchangeability is a mere convenience feature, and not an integral aspect of the cabinet door.

As an initial matter, *Trost* is inapposite to the instant case, even though *Trost* dealt with a similar fact pattern: a product was used repeatedly for a long period of time

without incident before the injury occurred. In *Trost*, the Eighth Circuit affirmed the district court's grant of summary judgment on the basis that the plaintiff did not submit a timely expert report or affidavit tending to establish the elements of his products liability claim, and that the district court did not abuse its discretion in excluding that expert opinion. Absent that expert opinion, the Eighth Circuit held that there was no evidence in the record supporting plaintiffs' claims.

In this case, however, the timely Bhatt report and affidavit are sufficient to defeat summary judgment. Bhatt claims that he examined the hinge pin that broke and found that the common usage of the cabinet door created a foreseeable risk that the hinge pin, manufactured with Zamak 5, would break. That break, according to Bhatt, would in turn cause the door to fall. According to Bhatt, a stronger material, such as stainless steel, would have been safer. Bhatt also opines that redundant hinge features would prevent this type of injury if one hinge failed. Although defendants' experts opine that the hinge pin fracture was caused by abuse of the cabinet doors and that Zamak 5 was an appropriate material given the lack of additional reported accidents, the dispute between these experts and Bhatt must be resolved by a jury.

In sum, the question of whether the manufacturers, Rittal and Ortal, exercised a reasonable degree of care in designing the VR Computer Cabinet and hinge assembly, and therefore whether the product was unreasonably dangerous for its intended use, is disputed. Accordingly, the Court denies Rittal's and Ortal's motion for summary judgment on the defect-design claims under either negligence or strict liability theories.

## 2. Affidavits submitted by plaintiffs

Plaintiffs also attempt to raise a fact dispute by submitting affidavits of BCBSM employees Brian Killeaney, David Thomas, and Gary Ehlinger.

Killeaney states that after Hammond's accident, he found documentation on Compaq's website referencing problems with hinge pins breaking on cabinet doors. (Killeaney Aff., Docket No. 94, ¶ 3.) Killeaney does not indicate, however, what type of Compaq computer cabinets were at issue in those complaints. Killeaney also testified that he printed this information and gave it to Janet Ajax, his superior. At some point, however, the documentation printed by Killeaney was lost and Killeaney claims that he was told that the documentation was removed from the Compaq website. (*Id.*, ¶¶ 4-5.) Killeaney also states that after a meeting between Compaq representatives and BCBSM representatives regarding the incident in question, Compaq replaced the Plexiglass inserts on BCBSM server cabinet doors with lighter screen-mesh inserts. (*Id.*, ¶ 6.)

Ehlinger, a senior technology engineer at BCBSM, states that he was aware of another incident involving a BCBSM employee and the Compaq Series 7000 Rack. Specifically, Ehlinger states that a month before Hammond was injured, another BCBSM employee "had opened the [Compaq Series 7000] cabinet door and the top hinge pin broke, allowing the door to fall," (Ehlinger Aff., Docket No. 96, ¶ 7), but Ehlinger does not indicate that the earlier incident was immediately reported to Compaq.

Thomas' affidavit essentially corroborates Killeaney's statement, claiming that he saw the documents that Killeaney found on the website, and that those documents "described how other companies had experienced problems with hinges on the Compaq

computer cabinet doors." (Thomas Aff., Docket No. 95, ¶ 3.) Like Killeaney, Thomas does not specify which Compaq computer cabinets were at issue in that documentation. Thomas also states that BCBSM was advised after the accident that Compaq was coordinating the replacement of cabinet doors on BCBSM's equipment with screen-mesh inserts.

Defendants object to the introduction of these affidavits, arguing that the substance of the affidavit testimony was not previously disclosed before it was presented in the summary judgment motion briefs. In short, defendants argue that plaintiffs had no "substantial justification" for failing to update and apprise defendants of the substance of these affidavits, *see* Fed. R. Civ. P. 26(e), and that defendants have not had an adequate opportunity to conduct discovery.

Putting aside the procedural propriety of the affidavits, the affidavits are not significantly probative to establish a fact issue regarding notice or foreseeability. In particular, the Killeaney affidavit fails to identify the type of computer cabinet that was complained of on Compaq's website and, even allowing plaintiffs the benefit of all reasonable inferences, the Court is unwilling to assume that the reported complaints must have been about Compaq Series 7000 Rack. The Ehlinger affidavit is also not useful: although Ehlinger asserts that he was aware of an earlier incident at BCBSM facilities involving the Series 7000 computer door, Ehlinger does not indicate that any of defendants were aware of the incident or were put on notice of problems with the cabinet door as a result of the incident. Further, the Thomas affidavit specifically indicates that although BCBSM raised the cabinet door issue with the manufacturer *after* Hammond

was injured, "[t]he manufacturer indicated that they had no reports of similar problems with the Compaq cabinets." (Thomas Aff., Docket No. 95, ¶ 2.)

Thus, the affidavits have very little impact on this Court's review of the factual sufficiency of plaintiffs' claims. The Court notes, however, that defendants have not had the opportunity depose these witnesses. Because the Court does not exclude these affidavits from consideration, and with a view to the potential impact of those witnesses' testimony at trial, the Court will grant a short extension of time for discovery relating to the subject matter of the affidavits of Killeaney, Ehlinger, and Thomas.

### B. Failure-to-Warn Claims Against Rittal and Ortal

Plaintiffs also bring negligence and strict liability claims for failure to warn, arguing that the installation instructions failed to warn users "about the risk associated with the normal and foreseeable opening and closing of the cabinet doors and the likelihood that a pin will break or a hinge fail, causing the door to fall." (Pl.'s Mem. in Opp'n to Mots. for Summ. J., Docket No. 92, at 22.) A failure-to-warn claim consists of three elements: "(1) whether there exists a duty to warn about the risk in question; (2) whether the warning given was inadequate; and (3) whether the lack of a warning was a cause of plaintiff's injuries." *Seefeld v. Crown, Cork & Seal Co., Inc.*, 779 F. Supp. 461, 464 (D. Minn. 1991) (citing *Balder v. Haley,* 399 N.W.2d 77, 81 (Minn. 1987)). Whether a legal duty to warn exists is a question of law, *Balder*, 399 N.W.2d at 81, and that determination depends on the resulting injury's foreseeability. *See Westbrock*, 473 N.W.2d at 358; *see also Seefeld*, 779 F. Supp. at 464 (holding that in deciding whether

there is a duty to warn, "the Court must determine whether the plaintiff's injuries were a direct consequence and the type of occurrence that was or should have been reasonably foreseeable, given the defective condition").[4] Plaintiffs have the burden of establishing the connection between the failure to warn and the resulting injury. *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 276 (Minn. 1984).

Rittal argues that there is no evidence that it had a duty to warn because Compaq created, drafted, and distributed the installation instructions for the Compaq Series 7000 Rack when it was sold. Rittal further argues that even if it was responsible for the installation instructions, it had no duty to warn because it had no reason to foresee that the hinge would break off in the manner at issue here. Further, Rittal argues that plaintiffs have not produced evidence indicating that the installation instructions were inadequate in any way or that alternative instructions were more appropriate.

Plaintiffs conceded at the hearing on this motion that the central focus of their case was not the failure-to-warn claims. That concession is not surprising, given the lack of evidence supporting the claim. "Only if there is a specific factual dispute concerning a manufacturer's awareness of a risk should the [failure-to-warn] issue be submitted to the

---

[4] It is somewhat unclear whether, in practice, Minnesota distinguishes between failure-to-warn claims premised on negligence and strict liability theories. *See, e.g.*, *Bigham v. J.C. Penney Co.*, 268 N.W.2d 892, 897 (Minn. 1978); *see also Holm v. Sponco Mfg. Inc.*, 324 N.W.2d 207, 215 (Minn. 1982) (Simonett, J., concurring in part and dissenting in part) ("As a practical matter, where the strict liability claim is based on . . . failure to warn . . . there is essentially no difference between strict liability and negligence."). The Court need not ultimately parse the failure-to-warn law in Minnesota, however, as the critical question for the Court at this stage is whether as a matter of law Rittal and Ortal owed a duty to warn to Hammond and other computer cabinet users.

jury for its resolution." *Huber v. Niagara Mach. & Tool Works*, 430 N.W.2d 465, 467 (Minn. 1988). Although the Bhatt opinion contends that the behavior of the hinge pin in this case was foreseeable, plaintiffs do not offer additional evidence indicating, in light of the number of computer cabinets and hinges produced without incident, that Rittal or Ortal were aware of the risk. Thus, although the Bhatt opinion is adequate to establish a question of fact for the purposes of design-defect (*i.e.*, the opinion demonstrates a likelihood of harm in the Court's balancing test at summary judgment), it is insufficient to demonstrate that defendants had a legal duty to warn users of the risks associated with the normal opening and closing of the cabinet door as a matter of law. Accordingly, defendants' motion for summary judgment on the failure-to-warn claims is granted.

### III. MOTION BY COMPAQ

Compaq joins Rittal's arguments, and adds that it is entitled to summary judgment on all of plaintiffs' design-defect and failure-to-warn claims for two additional reasons: plaintiffs have not demonstrated that Compaq knew of the Series 7000 cabinet's condition and the risks involved in that condition, and the Minnesota seller's exception statute precludes recovery from Compaq under strict liability principles.

#### A. Negligent Design-Defect and Negligent Failure to Warn

In a Minnesota products liability action, "a negligence claim against the distributor[] require[s] proof that they had knowledge of the products' condition and the risks involved in that condition." *Willmar Poultry Co. v. Carus Chemical Co.*, 378 N.W.2d 830, 835 (Minn. Ct. App. 1985). Compaq asserts that summary judgment is

appropriate because plaintiffs have failed to demonstrate that Compaq knew of the allegedly defective condition of the Series 7000 Computer Rack. Plaintiffs respond by submitting the affidavits of Killeaney, Ehlinger, and Thomas. As noted above, however, those affidavits fail to create a genuine fact issue that Compaq, Rittal, or Ortal were aware of the allegedly defective condition of the Series 7000 Rack cabinet doors or hinge assemblies or the risks involved in such condition. Accordingly, Compaq's motion is granted as to the negligent design-defect and negligent failure-to-warn claims.

### B. Strict Liability: Design-Defect and Failure-to-Warn Claims

Minnesota limits a party's ability to bring a strict liability action for design-defect or failure to warn against a defendant other than the manufacturer, such as a commercial seller or retailer. *See generally* Minn. Stat. § 544.41; *see also Marcon v. Kmart Corp.*, 573 N.W.2d 728, 730 (Minn. Ct. App. 1998). An injured party may maintain a strict liability action against a commercial seller of a product if the plaintiff can establish that the manufacturer cannot satisfy a "reasonable settlement." Minn. Stat. § 541.41, subds. 1, 2. Even if a manufacturer can satisfy a reasonable settlement, however, a plaintiff may maintain a strict liability action against the seller if the plaintiff can show:

> (a) that the defendant has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage;
>
> (b) that the defendant had actual knowledge of the defect in the product which caused the injury, death or damage; or
>
> (c) that the defendant created the defect in the product which caused the injury, death or damage.

Minn. Stat. § 544.41, subd. 3.

Compaq asserts that the seller's exception statute applies because Compaq did not exercise significant control over the design of the Series 7000 Rack and it did not provide warnings or instructions to Rittal or Ortal of any potential defect; and Compaq did not have actual knowledge of the allegedly defective condition that injured Hammond. As the Court outlined earlier in this Order, plaintiffs have failed to produce adequate evidence that Compaq knew of the allegedly defective condition of the cabinet door and hinge assembly on the Series 7000 Rack. The Court thus turns to the question of whether Compaq exercised adequate control over the design of the Series 7000 Rack to limit the applicability of the seller's exception statute.

First, plaintiffs contend that many of the component parts of the Series 7000 Rack "were manufactured in strict accordance with Compaq Computer Corporation's own design specifications." (Pl.'s Mem. in Opp'n to Mots. for Summ. J., Docket No. 92, at 5.) Plaintiffs also assert that testimony from Stephen Hobbs, a managing director of a Rittal plant in the United Kingdom, and Ron Mann, the Director of Engineering for Compaq's rack and power infrastructure, support a finding that Compaq exercised significant control over the design of the Series 7000 Rack. Finally, plaintiffs contend that "Compaq held itself out to its customers as the manufacturer of the product . . . [and] did not in any fashion inform the end user that it was not the manufacturer of the product." (Pl.'s Mem. in Opp'n to Mots. for Summ. J., Docket No. 92, at 30).

As an initial matter, plaintiffs do not provide legal support – and the Court is not aware of support – for the proposition that a seller may be held strictly liable in a products liability action where the seller "holds itself out" as a manufacturer of the product. Further, although it is clear that the Rittal VR Computer Cabinet met Compaq's computer server rack specifications for what would eventually be the Series 7000 Rack, the VR Computer Cabinet was in production long before the Compaq Series 7000 Rack. Thus, the evidence supports a finding that the VR Computer Cabinet happened to meet Compaq's design specifications, but was not designed specifically to meet Compaq's specifications. Under those circumstances, the Court cannot find that Compaq played a significant role in the design of the cabinet manufactured by Rittal.

Plaintiffs respond that Hobbs and Mann admitted in testimony that Compaq periodically requested design modifications for the Compaq version of the VR Computer Cabinet. Specifically, Hobbs and Mann testified that Compaq specifically requested that Rittal install a perforated mesh door insert in the cabinet door instead of Plexiglass. That design request, however, does not establish that Compaq was a more involved seller. The design request did not address the hinge assembly of the cabinet, which is the root cause of Hammond's injuries. Further, even to the extent that the weight of the cabinet door played a role in causing the hinge assembly to break, by all accounts, the screen-mesh door insert was **lighter** than the original Plexiglass

insert.[5] Thus, plaintiffs failed to demonstrate that any modification to the VR Computer Cabinet, which was performed at Compaq's specific request, was related to the injuries suffered.

"The seller's-exception statute . . . tempers the harsh effect of strict liability as it applies to passive sellers, while ensuring that a person injured by a defective product can recover from a viable source." *In re Shigellosis Litig.*, 647 N.W.2d 1, 6 (Minn. Ct. App. 2002) (citation omitted). Here, plaintiffs have not shown that Rittal and Ortal would not be in a position to satisfy a "reasonable settlement," or that Compaq played an active role in the design of the computer cabinet or had actual knowledge of any design-defect in the cabinet. Accordingly, Compaq's motion for summary judgment on the strict liability claims for design-defect and failure to warn is granted.

After the close of a sixty-day extension of time to complete discovery to address the substance of the plaintiff-submitted affidavits of Brian Killeaney, David Thomas, and Gary Ehlinger, this case will be placed on the Court's next available trial calendar.

---

[5] Defendants argued at the hearing that the screen-mesh inserts replaced the Plexiglass inserts to provide better airflow to new servers that were housed in the cabinet.

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Compaq Computer Corporation's Motion for Summary Judgment.[6] [Docket No. 87] is **GRANTED**. Accordingly, Compaq is **DISMISSED with prejudice** from the case.

2. Defendants Rittal Corporation's and Ortal Diecasting, Inc.'s Motion for Summary Judgment [Docket No. 80] is **GRANTED in part** and **DENIED in part** as follows:

    a. The motion is **GRANTED** as to plaintiffs' failure-to-warn claims;

    b. The motion is **DENIED** in all other respects.

3. The Court grants the parties sixty (60) days from the date of the filing of this Order to conduct additional discovery, including taking deposition testimony and responding to requests for document production, regarding the substance of the plaintiff-submitted affidavits of Brian Killeaney, David Thomas, and Gary Ehlinger.


DATED: September 29, 2009  
at Minneapolis, Minnesota.

                                                        s/ John R. Tunheim  
                                                      JOHN R. TUNHEIM  
                                                   United States District Judge

---

[6] Because Ortal is not a retailer or seller in this products liability context, Compaq's retailer-specific motion and arguments do not apply to Ortal.